The Chancellor.
The writing which it is the object of this bill to establish and prove as the last will and testament of Barnes B. Smock, was executed by him, as his will, in due form of law, on the thirty-first day of August, 1846. This is proved by the subscribing witnesses to the instrument. There is no one who testifies to having seen the will, from the time of its execution until its discovery after the testator’s death. It was then found, on the day of his funeral, by his widow and his sons Ira Smock and the complainant, who were looking among the decedent’s papers for a will, in a drawer of a desk in his bed-room, where he kept all his papers of any value. It was wrapped up by itself in a newspaper, called the Fredonian, of the date of August 5th, 1846. The name of the testator and the seal were cut off, leaving only the letter B, the first letter of the testator’s name, partly remaining. From the inspection of the instrument, it is apparent that the mutilation was made by scissors, or some other sharp instrument ; and that by whomsoever it was done, it was the intention of the person doing it to cancel it, and destroy its validity as a will. The act is not equivocal. It was not done by mistake or accident. The mode in which it was done manifests the intention of its author.
This will was in the custody of the testator during his life, and upon his death it was found among his depositories cancelled, with his name and seal cut off. Under such circumstances, the testator himself is presumed to have done the act, and the law further presumes that he did it animo revocandi. 1 Williams on Ex. 78. In a late case, decided in the Prerogative Court, (afterwards taken up on appeal to the Delegates, where the decision below was affirmed) a will was found in the repositories of the deceased, and it appeared that some one had carefully *163 cut out, apparently with scissors, the whole of the instrument from its marginal frame; the attestation clause was also cut through, but no other part, of the writing: and it was held that the court were bound to construe the act as one done by the testatrix for the purpose of cancelling, revoking, or destroying the validity of the instrument, and consequently that it was thereby revoked. Moore v. Moore, 1 Phillim. 375; 1 Williams on Ex. 74. The same principle will be found established by the following cases: Freeman v. Gibbons, 2 Hagg. Eccl. Rep. 328; Bumgarten v. Pratt, Ib. 329; Richard v. Mumford, 2 Phillim. Rep. 23; Loxley v. Jackson, 3 Phillim. Rep. 126; Wilson v. Wilson, 3 Phillim. Rep. 552; Davis v. Davis, 2 Add. Eccl. Rep. 223; Colvin v. Frazer et al., 2 Hagg. Eccl. Rep. 266; Holland v. Ferris, 2 Bradford's Rep. 334; Bulkley v. Redmond, Ib. 282; 6 Wend. 180.
By the statute (Nix. Dig. 873, § 2,) it is provided that “ no devise or bequest in writing, of any lands, tenements, hereditaments, or other estates whatsoever in this state, or of any estate per autre vie, or any clause thereof, shall be revocable, otherwise than by some other will or codicil in writing, or other writing declaring the same, or by burning, cancelling, tearing, or obliterating the same by the testator himself, or in his presence, and by his direction and consent.” And by a subsequent statute (Nix. Dig. 877, § 25,) “ all written revocations of wills shall be executed in the same manner as wills are hereby required to be executed, and when so made shall be sufficient to revoke any last will, or a part thereof.”
The complainant produces the will. But upon its face it is a mutilated, cancelled will. It is not suggested that it was cancelled by mistake or accident. Although the statute says nothing of a cancellation by mistake or accident, there can be no doubt that such a cancellation would not render the will invalid. The act would want the animus revocandi. It is not suggested that it was cancelled under circumstances which would render the act inopera *164 tive and ineffectual under the express provisions of the statute, as if done by some other person than the testator, but not in his- presence, although by his direction and consent. The will is presented under circumstances from which the presumption arises that it was cancelled in a manner which the statute declares effectual — by tearing or obliterating the same by the testator himself. To strengthen this presumption, which arises from the fact that the will was in the possession of the testator during his lifetime, and at his death was found among his papers mutilated in a way showing a design to cancel it, we have an additional fact, proved in this case, very significant in its character. It was cancelled in a manner in which the testator was accustomed, for many years previous to his death, to cancel instruments of writing. A large number of papers are produced, such as promissory notes, agreements, &c., running through a number of years, which the testator had paid off. They were found in his desk at his decease. They are all mutilated, in the same mode this will is, by having the name taken from the writing. Some are torn off, and some, with more care, like this will, have the name cut off with some sharp instrument. This is certainly a fact of some importance to show that the testator mutilated the j>aper, and his intention in doing it — to destroy the validity of the instrument.
The complainant must overcome the presumption which exists against the validity of the instrument. As the case stands, he has no alternative but to take the ground, that this will was mutilated criminally by some person other than the testator. Indeed this is the hypothesis assumed by the bill; and while the charge is not directly made, it is intimated that the act was committed by some, or one, of the defendants. They have all explicitly and circumstantially denied the charge. They deny having any knowledge that such a will was in existence; that they ever saw or heard of it until it was found in the condition it now is, after the death of the testator. There is no at *165 tempt made to impeach the denial of any of the defendants, except that of Ira Smock. There is evidence to show that he made some remarks, shortly before his father’s death, indicating some knowledge of the existence of such a will. But there is not a particle of evidence, or a circumstance in the whole case, which could justify any court in assuming that there was any ground for the slightest suspicion of any of the" defendants being criminally connected with the mutilation of the paper in controversy. The only evidence calculated to raise the slightest doubt as to the will’s having been cancelled by the testator himself, is to be found in the testimony given by Logan Bennet. And yet with regard to this evidence, laying out of view the consideration that its accuracy is made doubtful by his having related the circumstances to which he now testifies differently to different individuals, I think the declarations of the testator, to which he testifies, are not inconsistent with the presumption that the testator cancelled the will.
Logan Bennet was with the testator most of the time during his last illness. He knew of the fact of the will in question having been executed. The testator had asked him to be one of the subscribing witnesses, and he was prevented in consequence of being out of the way at the time of its execution. He testifies as follows: “I asked Mr. Barnes B. Smock about his will eight or ten days before he died; I was then staying there; I asked him Avliere his will was; he said it was in 'his desk; I asked him if it was all .right; he said it was.”
How if the testator himself had introduced the conversation about the will, and had called the attention of the Avitness to the fact of its being in his desk, as the repository Avhere it might be found, there would be something very significant in the circumstance. But here is a witness, who is in no manner interested in the will, asking him an impertinent question — where his will was ? Upon the presumption that he had himself cancelled it, he had *166 cancelled it secretly. He did not wish his family to know anything about it. It is not to be supposed, then, that he would have revealed to this witness the very fact he had been studiously keeping secret. Upon the presumption that he had cancelled it, he could not have answered the question in any way more consistent with that presumption, and a desire to evade the question and conceal the fact of the cancellation, than by replying, as he did, that it was in his desk: it was in his desk, and there it was found after his decease. The witness then asked him if it was all right ? Hard pressed as he was by these questions of the witness requiring categorical answers, but so luckily put that they might be answered in a manner consistent with the truth, and yet deceive an inquisitive inquirer, the testator laconically replies, “ it is.” All this was perfectly consistent with the presumption of his having cancelled it. It was in his desk, and it was all right. He had secretly cancelled it, and any other answers than those he gave the witness would have defeated his object in cancelling it in the way he did, and would have been calculated to create the very disturbance in the family which he probably desired to avoid.
There are other facts relied upon to overcome the presumption of the testator’s having cancelled the will. They are mainly the declarations of the testator recognising the existence of the will, and his speaking of the devises and bequests contained in it. These declarations were made more than a year prior to the testator’s death; and this fact destroys all influence that can be deduced from them to overcome the presumption. The fact, that up to within a year of his death, the testator freely spoke of the will— his ceasing to do so during the last year of his life strengthens the presumption that he cancelled it. While it was in existence he did not hesitate to speak of it. He ceased to speak of it because it had ceased to exist.
The complainant has failed to establish the case made by his bill, and it must be dismissed with costs.